**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ANTHONY S. BULL,

    Plaintiff,

v.                                                        Civil No.11-cv-00894-WJ-ACT

BGK HOLDINGS, LLC, BGK EQUITIES, INC.,
BGK EQUITIES II, LLC, BGK EQUITIES III, LLC,
BGK EQUITIES IV, LLC, BGK EQUITIES V, LLC,
RENAISSANCE DEVELOPMENT GROUP, LLC,
ROSEMONT REALTY, LLC, ROSEMONT
REAL ESTATE HOLDINGS, L.P., and EDWARD
M. GILBERT,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANTS' MOTION TO DISMISS**

THIS MATTER comes before the Court upon a Motion to Dismiss in Part Plaintiff's First Amended Complaint filed by BGK Equities on January 12, 2012 (**Doc. 26**). Having considered the parties' briefs and the applicable law, I find that Defendants' motion is not well-taken and is therefore DENIED.

**BACKGROUND**

This is a diversity action for damages. Plaintiff is a former employee and interest holder in certain of the Defendant entities (the "BGK entities")). According to the Amended Complaint (Doc. 12), between 1996 and 2005, Plaintiff acquired minority ownership interests in a number of the BGK entities, which are various family companies engaged in the business of real-estate development and real-estate investment. The BGK entities are substantially controlled by

Defendant Edward Gilbert who serves in the capacity of president of the various BGK entities. In 2005, Defendants allegedly made false statements of fact and contractually binding promises to induce Plaintiff to relocate himself and his family to Louisiana in order for Plaintiff to assist in BGK-related management and operations. Subsequently Defendants abandoned operations in Louisiana after Plaintiff moved to Louisiana.

Plaintiff further asserts that Gilbert and the BGK entities then launched an improper plan to cause Plaintiff to relinquish his minority interests in the BGK entities at a price significantly below their real value. Plaintiff's sale of his interest in the BGK entities arose out of a transaction (the "Rosemont Merger") in which all members and shareholders of the BGK entities were invited to participate. Prior to his retirement, Defendant Gilbert partnered with Rosemont Real Estate, LLC, to form Rosemont Realty, LLC. Plaintiff reviewed the documents associated with the Rosemont Merger, and elected to sell his interests in the BGK entities to Rosemont Real Estate, LLC, by assignment, on May 3, 2010. Plaintiff's claims in this case arise from circumstances relating to Plaintiff's relocation to Louisiana and from the sale of Plaintiff's interests in the BGK entities to Rosemont Real Estate, LLC.

The Amended Complaint asserts the following claims: Breach of Contract (Count One); Breach of Implied Covenant of Good Faith and Fair Dealing (Count Two); Breach of Fiduciary Duty (Count Three); Oppression (Count Four); Intentional Misrepresentation Regarding the Louisiana Operations (Count Five); Negligent Misrepresentation Regarding the Louisiana Operations (Count Six); Intentional Misrepresentation Regarding the BGK Entities Interests (Count Seven); Negligent Misrepresentation Regarding the BGK Entities Interests (Count Eight); Economic Duress (Count Nine); and Prima Facie Tort (Count Ten).

Defendants have asserted Counterclaims against Plaintiff for indemnification and

contribution, arising from the settlement of claims made or litigation initiated by third parties against Gilbert and/or certain BGK entities and/or Plaintiff.  Defendants claim that they are at least entitled to offset against the claims being asserted against them by Plaintiff, or an award of damages depending on the timing of the claims.

## DISCUSSION

Defendants seek dismissal of several claims asserted in the Amended Complaint.  They claim that Counts Four through Ten fail as a matter of law, essentially moving to limit the Amended Complaint to a contract action.

The standard for granting a motion to dismiss is well settled. When, as in this case, a plaintiff's complaint fails to state a claim for which there is a plausible entitlement to relief, the Court must dismiss the complaint.  *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007). While the well-pled factual allegations of a complaint must be accepted as true for purposes of a motion to dismiss, neither conclusory allegations nor legal conclusions disguised as factual allegations need be accepted as such.  *See id*. at 1965; *see also Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (holding that the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims). The burden is on the plaintiff to frame a "complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.  *Twombly*, 127 S. Ct. at 1965.

For purposes of the motion, the Court will not consider the "Additional Factual Allegations Relevant to Motion to Dismiss."  The Court agrees with Defendants that the analysis in a motion to dismiss is limited to the allegations in the Amended Complaint.

**I.      Whether Counts Five and Six Should Be Dismissed Based on Economic Loss Rule**

Defendants contend that Plaintiffs' claims of Intentional and Negligent Misrepresentation in Counts Five and Six must be dismissed pursuant to the economic loss rule, which precludes pleading breach of contract claims as tort claims.

The economic loss rule precludes recovery in tort for purely economic losses where the claims alleged are based on breach of an express or implied contractual duty. *See Utah Int'l, Inc. v. Caterpillar Tractor Co.*, 108 N.M. 539, 542 (Ct. App. 1989) (adopting the economic loss rule in New Mexico). The purpose of the rule is not to bar the recovery of economic loss damages; rather, the rule bars recovery of such damages under a tort cause of action. *In re Consolidated Vista Hills Retaining Wall Litigation*, 119 N.M. 542, 551 (1995) (parties "should not be allowed to use tort law to alter or avoid the bargain struck in the contract."); *see Farmers Alliance Mut. Ins. Co. v. Naylor*, 480 F. Supp. 2d 1287, 1289 (D.N.M. 2007) *("Naylor II")* ("The economic loss rule provides that a plaintiff may not recover in tort for losses that are purely economic, i.e., not involving personal injury or property damage."). The purpose behind New Mexico's economic loss rule is "to allow commercial parties to freely contract and allocate the risk of defective products as they wish." 108 N.M. at 542. The New Mexico Supreme Court observed that: "[a]s a matter of policy, the parties should not be allowed to use tort law to alter or avoid the bargain struck in the contract. The law of contract provides an adequate remedy." *Vista Hills.*, 119 N.M. at 550. Thus, Defendants' argument has merit only if Plaintiff is seeking monetary damages for economic loss as a result of a breach of contract between the parties.

The economic loss rule does not, however, bar a tort claim where an independent duty exists, "because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule." *Farmers Alliance Mut. Ins. Co. v. Naylor ("Naylor I")*, 452

F.Supp.2d 1167, 1173 (D.N.M. 2006).  Under New Mexico law, the "difference between a tort and contract action is that a breach of contract is a failure of performance of a duty arising or imposed by agreement; whereas, a tort is a violation of a duty imposed by law."  *Kreischer v. Armijo*, 118 N.M. 671 (Ct.App. 1994).  Common law claims of negligent and intentional misrepresentation can be examples of claims which arise from an independent and recognized duty of care.  *See*, *e.g.*, *Naylor*; *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256 (Colo. 2003) (claims of misrepresentation and fraud are claims which sound in tort and are designed to remedy economic loss that exists independent of a contract claim); *Grynberg v. Questar Pipeline Co.*, 70 P.3d 1, 13 (Utah 2003) (party who fraudulently induces another to enter into a contractual relationship may be held liable in tort for that fraud based on independent duty to avoid fraudulent pre-contractual conduct and on public policy which will not allow contract law to override that duty).

    Defendants object to Plaintiff's references to Colorado and Utah law for the proposition that the economic loss rule should not apply to bar claims of intentional or negligent misrepresentation.  (Doc. 34 at 7.)  The Court will nevertheless consider these cases for two reasons.  First, there are no reported New Mexico cases on this specific issue to guide the Court on this question.  *See Bhandari v. VHA Southwest Community Health Corp.*, slip copy, 2011 WL 1336515, *16 (D.N.M. 2011).  Second, the courts' findings in *Naylor* and *Grynberg* appear to be consistent with how the Supreme Court of New Mexico would decide the issue.  Defendants urge the Court to follow *Bhandari* from the District of New Mexico as "controlling authority," but *Bhandari* does not run counter to Plaintiff's position.  In *Bhandari*, U.S. District Judge James O. Browning held that the economic-loss rule did not bar defendants' counterclaims of fraud because those claims went beyond allegations that plaintiff had failed to perform under the

contract. 2011 WL 1336515, *24.[1]  Defendants also cite to *Naylor I*, in which U. S. Magistrate Judge William P. Lynch, the presiding judge in the case, determined that the economic-loss rule applied to plaintiffs' negligence claims under New Mexico law.  However, unlike the alleged misrepresentation in the instant case, the negligence alleged in the *Naylor I* cases arose in the performance of the contract.

Thus, Defendants offer no viable reason based on case law to find that Plaintiff's claims of negligent and intentional misrepresentation are barred by the economic-loss rule.  The Amended Complaint alleges that Plaintiff and the BGK entities entered into contractual agreements regarding (1) Plaintiff's employment with the BGK entities; (2) Plaintiff's ownership interests in the BGK entities; and (3) the funding and completion of the Louisiana operations.  Doc. 12, ¶ 29.  Plaintiff claims that the allegations for misrepresentation are not based on any breach of these contracts between the parties, because the misrepresentations alleged in Counts Five and Six were for the purpose of inducing Plaintiff to act by relocating to Louisiana and preceded the formation of the contract regarding Plaintiff's relocation.  If the alleged misrepresentations were made to Plaintiff in order to induce him to sign the contract to relocate, or to buy into the BGK entities as a minority owner, these claims are not within a contract's allocation of risks.  *See BC Technical, Inc. v. Ensil Intern. Corp.*, slip copy, 2012 WL 375498, *7 (10th Cir. 2012) ("If the claim is not within the contract's allocation of risks, but instead arises from an independent duty, the economic-loss rule will not apply.").

Defendants argue that, even if they owed Plaintiffs a duty, that duty has nothing to do

---

[1] The specific issue in *Bhandari* was whether the New Mexico courts would apply the economic-loss rule to service contracts—which that Court answered in the negative.  While the instant case does not involve a service contract, the Court would follow the same analysis here in order to determine whether an independent tort exists, and thus whether the economic loss rule applies.

with Plaintiff's employment. (Doc. 34 at 7.) However, the allegations in Counts Five and Six are not based merely on Plaintiff's employment (in which case Defendants' conduct would be governed by the employment contract between the parties), but on misrepresentations made during part of the contract negotiations in order to induce him to undertake the Louisiana operations. Plaintiff is therefore not barred from pursuing tort theories in the lawsuit because of the economic loss rule, or limited to choosing between contract or tort where the tort arises from conduct that is alleged to go beyond the contractual duties of the parties. *See Adobe Masters, Inc. v. Downey*, 118 N.M. 547 (1994) (plaintiff may bring malpractice claim based on negligence or for breach of contract arising from the breach of the implied warranty to use reasonable skill).

Plaintiff also alleges that the BGK entities and Gilbert owed him fiduciary duties as a minority owner, including but not limited to duties of loyalty, honesty, and disclosure, and that they breached those duties. (Doc. 12, ¶¶39–40.) There is support in New Mexico case law for this argument. *See, e.g.*, *Allsup's Convenience Stores, Inc. v. N. River Ins. Co.*, 127 N.M. 1 (1999) (a director, officer or controlling shareholder of a business corporation owes common-law fiduciary duties to both the corporation and other shareholders); *Walta v. Gallegos Law Firm, P.C.*, 131 N.M. 544, 553–54 (N.M. App. 2001) ("The relationship of a partner to the partnership and to the other partners is a fiduciary relationship.");[2] *Fate v. Owens*, 130 N.M. 503 (N.M. App. 2001). Defendants dispute the existence of such a duty, but present no case law to dissuade the Court that the duty exists. Therefore, I find that the economic-loss rule does not bar Plaintiff's claims of misrepresentation in Counts Five and Six because those claims are based on

---

[2] In *Walta*, the New Mexico Court of Appeals did not address the issue of whether the economic loss rule applied when a fiduciary duty existed, because the parties did not preserve the issue for appeal. 131 N.M. at 546.

the breach of an independent duty, a fiduciary duty, which Defendants owed to Plaintiff.[3]

## II.     Whether Counts Four, Seven, Eight and Nine Must Be Dismissed As Matter of Law

Defendants contend that Plaintiff has failed to allege sufficient facts in support of Count Four for oppression, Count Seven for intentional misrepresentation regarding the BGK Entities' interests, Count Eight for negligent misrepresentation regarding the BGK Entities' interests, and Count Nine for economic duress.  These claims are predicated on Plaintiff's sale of his interest in the BGK entities in the Rosemont Merger and with his decision to accept employment with the Louisiana operations.

### A.     Counts Four and Nine

Defendants contend that Plaintiff's allegations in Counts Four and Nine reflect nothing more than dissatisfaction with the result of his sale of his interests in the BGK entities.

Count Four alleges oppression.  "Oppressive conduct" is an "expansive term that is used to cover a multitude of situations dealing with improper conduct." *McCauley v. Tom McCauley & Son, Inc.*, 104 N.M. 523, 528 (Ct. App. 1986).  In the shareholder context, oppressive conduct is "harsh, dishonest, or wrongful conduct and a visible departure from the standards of fair dealing which inure[s] to the benefit of [the] majority and to the detriment of the minority." *Id.*

Defendants accurately note that "[m]ere dissatisfaction on the part of a minority stockholder will not justify dissolution." *Id.*  A claim of oppression will not lie "merely because plaintiff's expectations were not fulfilled." *Id.*  However, the allegations in the amended

---

[3] Based on the Court's conclusion on this issue, no further analysis is necessary with regard to whether the contracts between the parties constitute commercial transactions, or whether there was great disparity in bargaining power. *See Farmers Alliance Mut. Ins. Co. v. Naylor*, 452 F.Supp.2d 1167, 1171–72 (D.N.M. 2006) (holding that in commercial transactions, when there is no great disparity in bargaining power of the parties, economic losses are not recoverable in tort actions).

complaint state more than Plaintiff's mere dissatisfaction with the result of his sale. The amended complaint asserts that he was not provided all the documents necessary to independently evaluate his interests in considering the Rosemont Merger. Plaintiff states that certain information and documentation that was not disclosed to him before was "finally provided" only at the request of Plaintiff's attorney prior to the filing of this action. (Doc. 12., ¶ 23.) Defendants state that they in fact did provide Plaintiff with the necessary documents. This may be determined to be true in the end, but for now the Court must accept the allegations in the complaint as accurate. *See Twombly*, 127 S.Ct. at 1965 ("[A]llegations in the complaint are viewed as true, even if they are doubtful in fact."). This alleged conduct plausibly supports a claim of oppression.

In Count Nine, Plaintiff alleges that Defendants applied economic duress, contrary to their fiduciary obligations, inducing Plaintiff to sell his interests at substantially less than their reasonable worth. Defendants move for dismissal of this claim because it has been characterized more as a restitutional remedy than a claim. *See, e.g.*, *First Nat. Bank in Albuquerque v. Sanchez*, 112 N.M. 317, 320 (N.M. 1991) (acknowledging that "there are circumstances in which a claim of economic duress has been analyzed as a tort," but noting that "in its traditional sense, duress is not in and of itself a recognized tort"). Defendants also contend that the duress claim must be dismissed because Plaintiff elected to sell his interest in the BGK entities, and that there were no wrongful acts on their part alleged in the Amended Complaint.

While duress can be considered a form of remedy, it can also be asserted as a separate claim. In the context of business interests, the doctrine of duress has been referred to by other names: business or economic coercion, compulsion and threats, as well as duress. *Terrel v. Duke City Lumber Co.*, 86 N.M. 405, 422 (Ct.App. 1974), *aff'd in part, rev'd in part*, 88 N.M. 299

(1975).  The rationale of the doctrine

> is to discourage or prevent an individual in a stronger position, usually economic, from abusing that power by presenting an unreasonable choice of alternatives to another person in a weaker or more vulnerable position, in a bargain situation. That is to say the doctrine provides a cause of action so that an individual can protect his economic interests from the unreasonable exercise of power or advantage, usually economic, in a bargain situation.

*Terrel*, 86 N.M. at 422, *cited in Sanchez*, 112 N.M. 317, 320 (N.M. 1991).

The allegations in the amended complaint state more than Plaintiff's dissatisfaction with the outcome of the sale of his interest.  He alleges that Defendants BGK entities and Gilbert "required [Plaintiff] to and as a condition to his continued employment to 'temporarily assign' his interests in Renaissance New Mexico to one or more of the BGK entities, and affiliated companies, and they wrongfully retain [sic] those interests at this time." (Doc. 12, ¶ 13.)  The amended complaint also chronicles alleged misinformation given to Plaintiff intentionally to induce him to sell his minority interests in the companies.  (*Id.* ¶¶ 19–20.)  This statement is in direct opposition to Defendants' position that Plaintiff was fully informed prior to his decision to sell his interests and that the decision was fully volitional on his part.  Therefore, Defendants' motion is denied with respect to Count Nine.

      B.    <u>Counts Seven and Eight</u>

Defendants seek dismissal of Plaintiff's negligent and intentional misrepresentation claims in Counts Seven and Eight which concern the BGK entities interests.  Defendants contend (1) that the amended complaint lacks sufficient supporting detail for negligent misrepresentation, and (2) that Plaintiff fails to meet the Rule 9(b) particularity rule in alleging intentional misrepresentation or fraud, and fails to set forth the time, place, and contents of the false representation, and identity of the party making the allegedly false statements.

In order to adequately plead a claim of negligent misrepresentation, a plaintiff is required to allege that: (1) the defendant made a statement that, though perhaps literally true, is misleading; (2) the defendant failed to exercise ordinary care in obtaining or communicating the statement; (3) the defendants intended that the plaintiff receive and be influenced by the statement; and (4) it was reasonably foreseeable that the plaintiff would be harmed if the information was incorrect or misleading. *Eckhardt v. Charter Hosp. of Albuquerque, Inc.*, 124 N.M. 549, 562 (Ct.App. 1998).

An intentional or fraudulent misrepresentation claim, to be successful, requires that the injured party show that the other party: (1) made a misrepresentation of fact intentionally or with reckless disregard for the truth, (2) with the intent to deceive and to induce the injured party to act upon it, (3) and upon which the injured party actually and detrimentally relies. *Saylor v. Valles*, 133 N.M. 432 (Ct.App. 2003).

The purpose of Rule 9(b) of the Federal Rules of Civil Procedure is "not to reintroduce formalities to pleading, but is instead to provide defendants with a more specific form of notice as to the particulars of their alleged misconduct." *See, e.g.*, *United States ex rel Bledsoe v. Cmty. Health Sys.*, 501 F.3d 493, 503 (6th Cir. 2007); *Steadman v. Turner*, 84 NM 738 (Ct.App. 1973) (the allegations should leave no doubt in the defendants' mind as to the claim being asserted against them).

Rule 9(b) must be interpreted in harmony with Rule 8, which requires that a complaint provide "a short and plain statement of the claim" made by "simple, concise, and direct allegations." *Id*. (quoting Fed. R. Civ. P. 8(a)).  Under Rule 8, a complaint need not allege an exhaustive roadmap of a plaintiff's claims, but must be sufficient to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551

U.S. 89 (2007) (quoting *Twombly*, 550 U.S. 544 (2007)).  In other words, while Rule 9(b) adds particularity requirements for allegations of fraud or mistake, it should not be read to defeat the general policy of "simplicity and flexibility" in pleadings contemplated by the Federal Civil Rules.  *See, e.g.*, *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 678 (6th Cir. 1988) (quotation omitted).  While evidentiary details for a claim of fraud need not be alleged, there must be sufficient particularity in the pleading if the facts alleged are facts from which fraud will be necessarily implied.  *Romero v. Sanchez*, 83 N.M. 358 (1971).  At least some specific examples of the alleged false claims must be provided in the complaint.  *U.S. ex Rel. Downy v. Corning, Inc.*, 118 F.Supp.2d 1160, 1173 (D.N.M. 2000).

 I find that the amended complaint gives fair notice to Defendants of the allegations pertaining to both negligent and intentional misrepresentation.  It is true that the allegations contained in the separate counts (doc. 12, ¶¶ 66 and 75) do not contain detail which would give sufficient notice to Defendants of the basis for the claim of intentional misrepresentation.  However, it is expected that Defendants will be reading the rest of the amended complaint as well.  Statements in the amended complaint allege the time and place of the alleged misrepresentations, as well as the individuals who alleged to have made the misrepresentations (*id.* at ¶¶ 16–17; ¶¶ 22–25).  These allegations support a viable claim that the representations made by Defendants were done to mislead Plaintiff.  There is enough here for Defendants to effectively proceed with discovery in order to formulate a defense to this claim.  It could be that Plaintiff's claims will not withstand the stricter factual scrutiny of a summary judgment motion, but such evidentiary presentation is unnecessary at this stage, even under the stringent Rule 9(b) requirements.  Accordingly, Defendants' motion is denied regarding Counts Four, Seven, Eight and Nine.

### III.     Whether Count Ten Must Be Dismissed

Defendants contend that Plaintiff's claim of prima facie tort in Count Ten should be dismissed because Plaintiff fails to allege any tort, act, fact or duty that is not already covered by the other torts he asserts.

New Mexico has joined a few jurisdictions recognizing a cause of action for prima facie tort.  *See Schmitz v. Smentowski*, 109 N.M. 386, 394 (1990).  The elements of the action are: "(1) an intentional and lawful act; (2) an intent to injure the plaintiff; (3) injury to the plaintiff as a result of the intentional act; (4) and the absence of sufficient justification for the injurious act." *Lexington Ins. Co. v. Rummel*, 123 N.M. 774 (1997); *Stock v. Grantham*, 125 N.M. 564, 575 (N.M. App. 1998).  "The value and validity of prima facie tort as a separate cause of action depends upon its ability to offer relief for the intentional infliction of harm where the actor's otherwise lawful conduct cannot be brought within other more traditional categories of liability." *Healthsource, Inc. v. X-Ray Associates of New Mexico*, 138 N.M. 70 (N.M. App., 2005).

"Prima facie tort provides a remedy for persons harmed by intentional and malicious acts that are otherwise lawful, but fall outside of the rigid traditional intentional tort categories." *Negrete v. Maloof Distributing L.L.C.*, 762 F.Supp.2d 1254, 1285 (D.N.M. 2007).  "[T]here is simply no need to resort to prima facie tort" when a plaintiff has "existing causes of action provid[ing] reasonable avenues to a remedy for the asserted wrongful conduct." *Bogle v. Summit Investment Co., L.L.C.*, 137 N.M. 80 (N.M. App. 2005), cited in *Negrete*, 762 F.Supp.2d at 1286.

Plaintiff urges the Court to allow him to plead prima facie tort in the alternative, in order to provide him with an avenue to remedy Defendants' wrongful conduct, and determine whether at the close of evidence whether the claim should proceed to the jury.  *See Smentowski*, 109 N.M. at 396 ("[I]f at the close of the evidence, plaintiff's proof is susceptible to submission

under one of the accepted categories of tort, the action should be submitted to the jury on that cause and not under prima facie tort"); *Healthsource, Inc.*, 138 N.M. 70 (N.M. App. 2005) (Prima facie tort may be pled in the alternative, but if the district court determines that the facts of the case would be more properly submitted under an established tort, it must dismiss the claim).

The amended complaint alleges that "Defendants acted intentionally so as to disrupt, destroy, and improperly benefit from the knowledge, expertise and property of Bull." (Doc, 12, ¶ 83). The intentional acts are elsewhere described in the amended complaint as misrepresentations which induced Plaintiff to relocate to Louisiana, and fit easily into the contours of the intentional misrepresentation claim asserted in Count Five. While I am inclined to agree with Defendants that these allegations do not fall outside of the classic intentional tort categories, I am reluctant to dismiss Count Ten before the evidence has been developed in this case. *See, e.g.*, *Hagebak v. Stone*, 133 N.M. 75 (N.M.App. 2002) (finding summary judgment inappropriate on prima facie tort claim even though acknowledging that claims for defamation and prima facie tort "might preclude submitting both claims to the jury."). Accordingly, Defendants' motion is denied with regard to Count Ten at this time.

## CONCLUSION

In sum, I find and conclude that the economic-loss rule does not bar Plaintiff's claims of misrepresentation in Counts Five and Six because those claims are based on conduct which falls outside of the parties' contracts, and because the claims are based on the breach of an independent duty, a fiduciary duty, which Defendants owed to Plaintiff.

I also find and conclude that the allegations concerning Counts Four and Nine in the amended complaint plausibly supports claims of oppression and economic duress.

I find and conclude that the amended complaint complies with Rule 9(b) in specificity to support the intentional misrepresentation claim in Count Seven, and also that it is detailed enough to give Defendants fair notice of Plaintiff's negligent misrepresentation in Count Eight.

I find and conclude that Plaintiff's prima facie tort claim in Count Ten survives the motion to dismiss and that it is premature to determine whether the evidence supports a tort which falls outside of other recognized tort categories.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Dismiss in Part Plaintiff's First Amended Complaint **(Doc. 26)** is hereby **DENIED** for reasons stated in this Memorandum Opinion and Order.

_____
UNITED STATES DISTRICT JUDGE